# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>DEON DAYE,<br><br>　　　　Defendant. | No. 16-CR-0088-LRR<br><br>**REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO SUPPRESS** |

_____

## *I.　INTRODUCTION*

The matter now before me is defendant's motion to suppress evidence allegedly seized in violation of the Fifth Amendment to the United States Constitution. (Doc. 15). The grand jury charged defendant in a one-count indictment with perjury, in violation of Title 18, United States Code, Section 1623. (Doc. 2). The charge arose from defendant's appearance before the grand jury on March 16, 2016. Defendant claims the government deprived him of his right to due process under the Fifth Amendment because he was under the influence of marijuana when he testified before the grand jury and claims his incriminating statements were therefore involuntary.

The Honorable Linda R. Reade, Chief United States District Court Judge, referred this motion to me for a Report and Recommendation. For the reasons that follow, I respectfully recommend that the Court deny defendant's motion to suppress.

## *II.　FINDINGS OF FACT*

On Thursday, February 2, 2017, I held an evidentiary hearing on defendant's motion. I admitted into evidence government's Exhibit 1 (a transcript of defendant's testimony before the grand jury on March 16, 2016), which is filed on the docket at Doc.

20. At the hearing, the United States did not present any witnesses. Defendant testified on his own behalf. I make the following findings of fact based on this evidence:

A few days before March 16, 2016, FBI Safe Streets Task Force Officer (TFO) John O'Brien served defendant with a grand jury subpoena. On the morning of March 16, 2016, defendant awoke at approximately 8:00 a.m. Between the time he woke and about noon that day, he smoked eight marijuana blunts and played video games. Defendant testified he consumed approximately $1/8^{th}$ of an ounce of marijuana. Defendant has been a regular marijuana user since 2010, last using marijuana around Christmas 2016. Defendant testified that when he smoked marijuana on March 16, 2016, it made him "lazy" and "out of my mind." When asked what that meant, defendant explained that it made him "feel like my mind is elsewhere" and that he is "not in his normal state of mind." He testified, though, that he could understand questions and perform normal functions like tying his shoes, using a phone, operating a motor vehicle, and working.

Defendant walked from his residence to the federal court house in Cedar Rapids on the afternoon of March 16, 2016. He met with TFO O'Brien and Assistant United States Attorney (AUSA) Lisa Williams before he testified. AUSA Williams noted the smell of marijuana and asked defendant if he had used marijuana. Defendant admitted that he had smoked marijuana that morning. AUSA Williams told defendant that he did not have to testify that day and could choose to come back another day when he had not smoked marijuana. Defendant stated that he wanted to testify. AUSA Williams asked defendant if the use of marijuana would affect his testimony. Defendant replied that it would not. Defendant testified at the hearing that he understood the question and thought it was a trick question such that if he had answered in the affirmative it would have gotten him in trouble.

Shortly thereafter, AUSA Williams took defendant before the grand jury to question him. Defendant's testimony began at 2:12 p.m. After the foreperson of the

grand jury placed defendant under oath, and prior to asking him any questions, AUSA Williams advised defendant of certain rights and obligations he had before the grand jury.

> Q. You have just been sworn by the foreperson of the grand jury and have taken an oath to testify truthfully. Do you understand that oath?
>
> A. Yes.
>
> Q. If you lie or knowingly make a false statement in your testimony before the grand jury, you may be prosecuted for the crimes of perjury or making a false declaration. If convicted of such an offense, you may be sentenced to a period of imprisonment and/or fined. Do you understand that?
>
> A. Yes.
>
> Q. You may refuse to answer any question if a truthful answer to the question would tend to incriminate you. Do you understand that?
>
> A. Yes.
>
> Q. Anything you say may be used against you by the grand jury or in a subsequent legal proceeding. Do you understand that?
>
> A. Yes.
>
> Q. You may consult with an attorney in connection with your appearance before the grand jury. My understanding is that you are not currently represented by an attorney; is that correct?
>
> A. Yes.
>
> Q. This grand jury will present you with a reasonable opportunity to step outside the grand jury room and contact an attorney if you so desire. Do you understand that?
>
> A. Yes.
>
> Q. Do you wish to contact an attorney at this time?

>   A.  No.
>
>   Q.  If at any point you would like to speak to an attorney, all you need to do is let me know and we'll take a break to allow you to contact an attorney of your choice. Do you understand that?
>
>   A.  Yes.
>
>   Q.  Is there anything about these rights and obligations that you do not understand?
>
>   A.  No.
>
>   Q.  Do you have any questions about any of the matters that we just covered?
>
>   A.  No.

(Exhibit 1, at 2-4). Before AUSA Williams asked any substantive questions of defendant, she addressed defendant's use of marijuana earlier in the day.

>   Q.  Mr. Daye, before we get to your testimony about April 13th, I want to talk about earlier today. You and I spoke before you came into the grand jury room; correct?
>
>   A.  Yes.
>
>   Q.  And it's my understanding that you have been using marijuana this morning?
>
>   A.  Yeah.
>
>   Q.  That use of marijuana, is that going to impact your testimony or your ability to remember any of the events that took place that you're going to testify about today?
>
>   A.  No.
>
>   Q.  Is the use of your marijuana earlier today going to have any impact on your ability to recall the events you're going to testify about?

> A. No.
>
> Q. Is that use of marijuana going to have any ability or impact on your ability to tell the truth today?
>
> A. No.
>
> Q. Do you have any concerns at all about the effects of you smoking marijuana earlier on your testimony before this grand jury?
>
> A. No.
>
> Q. And you understand that I told you that if you at all felt like it was going to affect or impair your memory that we could reschedule grand jury and have you come back on a different day to testify; is that correct?
>
> A. Yes.
>
> Q. We had that conversation and you told me that you were fine to testify today; is that correct?
>
> A. Yes.
>
> Q. If at any time you change your mind about that or feel confused or maybe that you're not understanding what's going on today, all you need to do is let me know and we'll stop and have you come back and testify maybe on a day that you didn't use marijuana. Okay?
>
> A. Yeah.

(Exhibit 1, 4-5). Defendant then testified about his knowledge of a traffic stop that took place on April 13, 2015. (Exhibit 1, 5-10). The indictment alleges that defendant's testimony about that traffic stop was false. Defendant's testimony lasted approximately ten minutes. (Exhibit 1). During that time, defendant did not express any concerns about his ability to testify as a result of using marijuana. Defendant's answers to the prosecutor's questions appear responsive, logical, coherent and appropriate.

## III.  ANALAYSIS

The Fifth Amendment to the United States Constitution provides that "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. CONST. amend. V. The question before the Court is whether the government compelled defendant to be a witness against himself when it allowed him to testify before the grand jury knowing defendant had used marijuana earlier in the day. Defendant claims that the government violated his due process rights by letting him testify before the grand jury, asserts his statements before the grand jury were involuntary, and asks the Court to suppress those statements.

A person is not "compelled" under the Fifth Amendment to be a witness against himself simply because he has been subpoenaed to appear before the grand jury. *See Cardarella v. United States*, 375 F.2d 222, 226 (8th Cir. 1967) (holding "that the self-incrimination clause of the Fifth Amendment does not automatically immunize from subpoena for testimony before a grand jury one who is neither in custody nor then charged with an offense, merely because an indictment might eventuate from the inquiry."). A witness before the grand jury nevertheless has a right not to incriminate himself. *United States v. Winter*, 348 F.2d 204, 208 (2nd Cir. 1965) ("The grand jury was entitled to his testimony subject, of course, to his right not to incriminate himself."). A witness subpoenaed to the grand jury is not in custody by reason of the subpoena and therefore need not be advised of his constitutional right against self-incrimination. As the Supreme Court has explained:

> Those [Miranda] warnings were aimed at the evils seen by the Court as endemic to police interrogation of a person in custody. *Miranda* addressed extrajudicial confessions or admissions procured in a hostile, unfamiliar environment which lacked procedural safeguards. The decision expressly rested on the privilege against compulsory self-incrimination; the prescribed warnings sought to negate the "compulsion" thought to be inherent in police station interrogation. But the *Miranda* Court simply did not perceive judicial inquiries and custodial interrogation as equivalents.

*United States v. Mandujano*, 425 U.S. 564, 579 (1976).

The question therefore is whether defendant's voluntary use of marijuana alone rendered his testimony involuntary such that it was compelled against his will. If defendant's testimony was involuntary, then it is inadmissible. *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973) (a voluntary statement may be used against a suspect, but an involuntary one offends due process). The government bears the burden of persuasion and must prove, by a preponderance of the evidence, that defendant's statements were voluntary. *Colorado v. Connelly*, 479 U.S. 157, 169 (1986); see *also United States v. Astello*, 241 F.3d 965, 966 (8th Cir. 2001).

The Supreme Court has "recognized two constitutional bases for the requirement that a confession be voluntary to be admitted into evidence: the Fifth Amendment right against self-incrimination and the Due Process Clause of the Fourteenth Amendment." *Dickerson v. United States*, 530 U.S. 428, 432 (2000). *See also Bram v. United States*, 168 U.S. 532, 542 (1897) (stating that the voluntariness test "is controlled by that portion of the fifth amendment . . . commanding that no person 'shall be compelled in any criminal case to be a witness against himself'"); *see generally Brown v. State of Mississippi*, 297 U.S. 278 (1936) (reversing a criminal conviction under the Due Process Clause because it was based on a confession obtained by physical coercion).

A statement is involuntary if the pressures exerted by the government on the suspect have overborne his will. *United States v. Meirovitz*, 918 F.2d 1376, 1379 (8th Cir. 1990). "A statement is involuntary when it [is] extracted by threats, violence or express or implied promises sufficient to overbear the [suspect's] will and critically impair his capacity for self-determination." *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004) (internal quotation marks and citation omitted). A statement is voluntary if it is "the product of an essentially free and unconstrained choice by its maker." *Schneckloth*, 412 U.S. at 225. A court considers the totality of the circumstances to determine whether a statement was made voluntarily. *Wilson v. Lawrence County*, 260

F.3d 946, 952 (8th Cir. 2001). This includes "the conduct of the officers and the characteristics of the accused." *LeBrun*, 363 F.3d at 724.

Importantly, a statement is not rendered involuntary by the incapacity of the suspect alone; there must be some coercive police activity. In other words, there must be some government conduct that caused the statement to become involuntary. *See Connelly*, 479 U.S. at 164 ("Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law."). In *Connelly*, the defendant, who suffered from schizophrenia, confessed to officers about a murder. The officers advised the defendant of his constitutional rights. The defendant did not allege the officers did anything to coerce the confession from him; rather, he argued that his statements were involuntary because he was mentally impaired by way of his mental disease. The Supreme Court found that his statement was not involuntary absent some type of coercive conduct by the police. As the *Connelly* Court explained: "A statement rendered by one in the condition of respondent might be proved to be quite unreliable, but this is a matter to be governed by the evidentiary laws of the forum . . . and not by the Due Process Clause of the Fourteenth Amendment." *Connelly*, 479 U.S. at 167. That is because "[t]he aim of the requirement of due process is not to exclude presumptively false evidence, but to prevent fundamental unfairness in the use of evidence whether true or false." *Lisenba v. People of State of California*, 314 U.S. 219, 236 (1941).

Here, defendant alleges that his statements were involuntary not because he had a mental disease or defect, but because he voluntarily used a controlled substance. The Eighth Circuit Court of Appeals has repeatedly made it clear that mere fact that a defendant was under the influence of a controlled substance does not per se render his statements involuntary. *See, e.g., United States v. Makes Room*, 49 F.3d 410, 415 (8th Cir. 1995) ("We have repeatedly declined to adopt a per se rule of involuntariness when confronted with intoxication and/or fatigue, and we decline to do so now.") (citing *United States v. Casal*, 915 F.2d 1225, 1229 (8th Cir.1990)). *Cf. United States v. Goodwin*,

No. 00-2750, 2000 WL 1852624, at *1 (8th Cir. Dec. 19, 2000) ("We have declined to adopt a per se rule that a Miranda waiver made under the influence of drugs is involuntary.") (unpublished).

Rather, the Court must first look at the totality of the circumstances to determine whether defendant's intoxication caused defendant's will to be overborne. *United States v. Howard*, 532 F.3d 755, 763 (8th Cir. 2008). *See also*, *e.g.*, *United States v. Korn*, 138 F.3d 1239, 1240 (8th Cir. 1998) (holding that under the totality of the circumstances, the fact defendant was under the influence of drugs and was exhausted when he made incriminating statements did not render them involuntary); *United States v. Byrne*, 83 F.3d 984, 989 (8th Cir.1996) (affirming district court's finding that statement was not involuntary although defendant was under the influence of a narcotic (methadone) at the time); *United States v. Casal*, 915 F.2d 1225, 1229 (8th Cir. 1990) (coherent confession not involuntary even though defendant had recently used methamphetamine and had not slept for five days).[1] Other Circuit Courts of Appeal have reached the same conclusion. *See*, *e.g.*, *Parsad v. Greiner*, 337 F.3d 175, 184 (2d Cir. 2003) ("The mere fact that petitioner is an alcoholic is insufficient to render his pre-*Miranda* statements involuntary."); *United States v. Brooks*, 125 F.3d 484, 491 (7th Cir. 1997) (statement voluntary despite claim that suspect was experiencing effects of crack cocaine, sleep deprivation, and a hand injury because defendant was alert, coherent, and able to make informed and voluntary choices).

Part of the totality of the circumstances includes whether the government advised the defendant of his right to remain silent. If "evidence shows that [defendant] understood his rights and knowingly waived them," then suppression is not required even if defendant was intoxicated on a drug at the time. *United States v. Turner*, 157 F.3d 552, 556 (8th

---

[1] The government also cited *United States v. Magness*, 69 F.3d 872 (8th Cir. 1995) for the proposition that "excessive use of anti-anxietal medication did not render confession involuntary." (Doc. 17, at 4). In *Magness*, however, the district court found that there was no credible evidence that the defendant was under the influence of medication. 69 F.3d at 874.

Cir. 1998). Given that defendant was not in custody, but, rather, made his statements before the grand jury, the government had no obligation to advise defendant of his right to remain silent. *See United States v. Plesons*, 560 F.2d 890, 895 (8th Cir. 1977) ("We consider the setting here [grand jury] far removed from the circumstances of custodial interrogation which inspired the Court in *Miranda* to institute warnings as safeguards to the exercise of constitutional rights."). Nevertheless, the government did advise defendant of his right to remain silent and defendant stated that he understood that right.

Based on the totality of the evidence before me, I find defendant's statements before the grand jury were voluntary and that his will was not overborne by his voluntary use of marijuana. The transcript of defendant's testimony before the grand jury (Exhibit 1) reflects logical, coherent, and appropriate answers to questions. At no point does the colloquy in the transcript suggest that defendant was unable to understand the questions posed to him. Defendant has not pointed to anything he said, failed to say, or did in the transcript that shows his will was overborne by his use of marijuana earlier in the day. Moreover, I find the prosecutor fully advised defendant of his rights and ensured he understood those rights prior to questioning him. The transcript also reflects that the prosecutor asked defendant questions about his use of marijuana to ensure that the use would not affect defendant's ability to understand the questions, recall events, or testify accurately. In short, the government took every possible effort to ensure defendant both knew his rights, but knowingly waived those rights. There is simply no coercive conduct by the government in this case.

At argument defendant suggested that the government could have conducted field sobriety tests or the like to assess the extent of the defendant's intoxication. Aside from the fact that there is no authority for requiring such efforts, there is no showing that those measures would affect the result. Defendant has provided no evidence that field sobriety tests or other testing would provide the government with any information that would allow it to better assess defendant's ability to comprehend and answer questions accurately. Rather, such tests would only provide the government with an assessment of

the degree to which his drug use affected his motor skills or confirm the fact, but not impact, of drug use.

Defendant relies on the Supreme Court's pronouncement in *Rogers v. Richmond*, 365 U.S. 534 (1961), for the general proposition that "[a] defendant in a criminal case is deprived of due process if his conviction is founded, in whole or in part, upon an involuntary confession, without regard to the truth of [sic] falsity of the confession." (Doc. 15-1, at 1). Although the proposition is true enough as a general principle, it is important to note the rational for the Court's holding in *Rogers*. In *Rogers*, police officers misled the defendant into thinking they were about to arrest his wife for a shooting. Although the evidence suggested that defendant's subsequent confession was likely truthful, the Court found suppression of the confession appropriate and explained why.

> Our decisions under that [the Fifth] Amendment have made clear that convictions following the admission into evidence of confessions which are involuntary, i.e., the product of coercion, either physical or psychological, cannot stand. This is so not because such confessions are unlikely to be true but because the methods used to extract them offend an underlying principle in the enforcement of our criminal law: that ours is an accusatorial and not an inquisitorial system—a system in which the State must establish guilt by evidence independently and freely secured and may not by coercion prove its charge against an accused out of his own mouth.

*Rogers*, 365 U.S. at 540-41. This case does not present the circumstances of which the Supreme Court was concerned in *Rogers* and for which it thought suppression of the evidence was necessary to deter wrongful government conduct.

Here, the government did not engage in any coercion of any sort. Defendant voluntarily used a controlled substance on a day when he knew he was to appear before the grand jury. Moreover, the government did not seek to exploit defendant's use of the controlled substance but, rather, repeatedly offered him the opportunity to return on another day when he had not used marijuana. Nothing in the facts of this case offend an underlying principle in the enforcement of our criminal law. This is not an appropriate case, therefore, for use of the judicially created remedy of suppression of evidence, the

purpose of which is to punish the government for wrongful conduct and to deter it from engaging in such conduct in the future. *United States v. Leon*, 468 U.S. 897, 906 (1984) (noting the history of the exclusionary rule as "a judicially created remedy designed to safeguard [constitutional] rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved."). Moreover, suppression of evidence comes at a substantial cost. "Jurists and scholars uniformly have recognized that the exclusionary rule imposes a substantial cost on the societal interest in law enforcement by its proscription of what concededly is relevant evidence." *United States v. Janis*, 428 U.S. 433, 448-49 (1976). Society should not pay the costs of suppressing evidence in this case when defendant cannot demonstrate that the government engaged in any conduct to make his testimony involuntary. If defendant's testimony was involuntary because he was high on marijuana, then the fault is his own and not the government's.

## IV. CONCLUSION

For the reasons set forth above, I respectfully recommend the Court **deny** defendant's motion to suppress (Doc. 15).

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CRIM. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CRIM. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED t**his 7th day of February, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa