**IN THE UNITED STATES DISTRICT COURT  
FOR THE NORTHERN DISTRICT OF IOWA  
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>DEON DAYE,<br><br>    Defendant. | No. 16-CR-88-LRR<br><br>**ORDER** |

_____

*TABLE OF CONTENTS*

*I.     INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.    RELEVANT PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . *2*

*III.   STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.    RELEVANT FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . *3*

*V.     ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*

      *A.    Nature of Defendant's Responses* . . . . . . . . . . . . . . . . . . . . . *8*  
      *B.    Government Coercion* . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*  
      *C.    Totality of the Circumstances* . . . . . . . . . . . . . . . . . . . . . . *10*

*VI.    CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*

*I. INTRODUCTION*

The matter before the court is Defendant Deon Daye's Objections (docket no. 38) to United States Chief Magistrate Judge C.J. Williams's Report and Recommendation (docket no. 22) recommending that the court deny Defendant's "Motion to Suppress" ("Motion") (docket no. 15).

## II. RELEVANT PROCEDURAL BACKGROUND

On December 6, 2016, the grand jury returned a one-count Indictment (docket no. 2) charging Defendant with perjury before the grand jury, in violation of 18 U.S.C. § 1623. Specifically, Defendant is charged with falsely testifying that (1) he had never met a person named Anthony Hall prior to April 13, 2015, and (2) he had never been in a car with Anthony Hall prior to April 13, 2015. *See* Indictment at 2. On January 24, 2017, Defendant filed the Motion. On January 27, 2017, the government filed a Resistance (docket no. 17). On February 2, 2017, Judge Williams held a hearing on the Motion. *See* Feb. 2, 2017 Minute Entry (docket no. 19); *see also* Motion Hearing Transcript (docket no. 34). At the motion hearing, Defendant appeared in court with his attorney, Jennifer Bonzer. Assistant United States Attorneys Lisa Williams and Emily Nydle appeared on behalf of the government. On February 7, 2017, Judge Williams issued the Report and Recommendation recommending that the court deny the Motion. On February 21, 2017, Defendant filed the Objections. The matter is fully submitted and ready for decision.

## III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence,

or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *See Lothridge*, 324 F.3d at 601. Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

## IV. RELEVANT FACTUAL BACKGROUND

Based on evidence presented at the motion hearing, Judge Williams found the following facts, which are restated verbatim in the Objections:

> A few days before March 16, 2016, FBI Safe Streets Task Force Officer (TFO) John O'Brien served defendant with a grand jury subpoena. On the morning of March 16, 2016, defendant awoke at approximately 8:00 a.m. Between the time he woke and about noon that day, he smoked eight marijuana blunts and played video games. Defendant testified he consumed approximately 1/8th of an ounce of marijuana. Defendant has been a regular marijuana user since 2010, last using marijuana around Christmas 2016. Defendant testified that when he smoked marijuana on March 16, 2016, it made him "lazy" and "out of my mind." When asked what that meant, defendant explained that it made him "feel like my mind is elsewhere" and that he is "not in his normal state of mind." He testified, though, that he could understand questions and perform normal functions like tying his shoes, using a phone, operating a motor vehicle, and working.
>
> Defendant walked from his residence to the federal court house in Cedar Rapids on the afternoon of March 16, 2016. He met with TFO O'Brien and Assistant United States Attorney (AUSA) Lisa Williams before he testified. AUSA Williams noted the smell of marijuana and asked defendant if he had used marijuana. Defendant admitted that he had smoked marijuana that morning. AUSA Williams told defendant that he did not have to testify that day and could choose to come back another day when he had not smoked marijuana. Defendant stated that he wanted to testify. AUSA Williams asked defendant if the use of marijuana would affect his testimony. Defendant replied that it would not. Defendant testified at the hearing that he understood the question and

3

thought it was a trick question such that if he had answered in the affirmative it would have gotten him in trouble.

Shortly thereafter, AUSA Williams took defendant before the grand jury to question him. Defendant's testimony began at 2:12 p.m. After the foreperson of the grand jury placed defendant under oath, and prior to asking him any questions, AUSA Williams advised defendant of certain rights and obligations he had before the grand jury.

Q. You have just been sworn by the foreperson of the grand jury and have taken an oath to testify truthfully. Do you understand that oath?

A. Yes.

Q. If you lie or knowingly make a false statement in your testimony before the grand jury, you may be prosecuted for the crimes of perjury or making a false declaration. If convicted of such an offense, you may be sentenced to a period of imprisonment and/or fined. Do you understand that?

A. Yes.

Q. You may refuse to answer any question if a truthful answer to the question would tend to incriminate you. Do you understand that?

A. Yes.

Q. Anything you say may be used against you by the grand jury or in a subsequent legal proceeding. Do you understand that?

A. Yes.

Q. You may consult with an attorney in connection with your appearance before the grand jury. My

understanding is that you are not currently represented by an attorney; is that correct?

A. Yes.

Q. This grand jury will present you with a reasonable opportunity to step outside the grand jury room and contact an attorney if you so desire. Do you understand that?

A. Yes.

Q. Do you wish to contact an attorney at this time?

A. No.

Q. If at any point you would like to speak to an attorney, all you need to do is let me know and we'll take a break to allow you to contact an attorney of your choice. Do you understand that?

A. Yes.

Q. Is there anything about these rights and obligations that you do not understand?

A. No.

Q. Do you have any questions about any of the matters that we have covered?

A. No.

(Exhibit 1, at 2-4). Before AUSA Williams asked any substantive questions of defendant, she addressed defendant's use of marijuana earlier in the day.

Q. Mr. Daye, before we get to your testimony about April 13th, I want to talk about earlier today. You and I

spoke before you came into the grand jury room; correct?

A. Yes.

Q. And it's my understanding that you have been using marijuana this morning?

A. Yeah.

Q. That use of marijuana, is that going to impact your testimony or your ability to remember any of the events that took place that you're going to testify about today?

A. No.

Q. Is the use of your marijuana earlier today going to have any impact on your ability to recall the events you're going to testify about?

A. No.

Q. Is that use of marijuana going to have any ability or impact on your ability to tell the truth today?

A. No.

Q. Do you have any concerns at all about the effects of you smoking marijuana earlier on your testimony before this grand jury?

A. No.

Q. And you understand that I told you that if you at all felt like it was going to affect or impair your memory that we could reschedule grand jury and have you come back on a different day to testify; is that correct?

A. Yes.

> Q. We had that conversation and you told me that you were fine to testify today; is that correct?
>
> A. Yes.
>
> Q. If at any time you change your mind about that or feel confused or maybe that you're not understanding what's going on today, all you need to do is let me know and we'll stop and have you come back and testify maybe on a day that you didn't use marijuana. Okay?
>
> A. Yeah.
>
> (Exhibit 1, 4-5). Defendant then testified about his knowledge of a traffic stop that took place on April 13, 2015 (Exhibit 1, 5-10). The indictment alleges that defendant's testimony about that traffic stop was false. Defendant's testimony lasted approximately ten minutes. (Exhibit 1.) During that time, defendant did not express any concerns about his ability to testify as a result of using marijuana. Defendant's answers to the prosecutor's questions appear responsive, logical, coherent and appropriate.

Report and Recommendation at 2-5; *accord* Brief in Support of Objections (docket no. 38-1) at 2-6.

## V. ANALYSIS

In the Motion, Defendant seeks to suppress evidence of his testimony before the grand jury on March 16, 2016. *See* Motion at 1. Specifically, Defendant argues that his testimony was involuntary, such that it amounts to an unconstitutional confession. *See* Brief in Support of Motion (docket no. 15-1) at 1. In the Report and Recommendation, Judge Williams concluded that, based on the totality of the circumstances, Defendant's testimony was voluntary. Report and Recommendation at 10. Accordingly, Judge Williams recommends that the court deny the Motion. *Id.* at 12.

In the Objections, Defendant objects to the following of Judge Williams's findings and conclusions: (1) finding that "[D]efendant's answers to the prosecutor's questions appear[ed] responsive, logical, coherent and appropriate," Brief in Support of Objections at 6 (quoting Report and Recommendation at 5); (2) finding that there was no coercive conduct by the government, *id.* at 7-8; and (3) concluding that the totality of the circumstances reflect that Defendant's testimony was voluntary, *id.* at 8-9. The court shall conduct a de novo review of each of these objections.

### A. *Nature of Defendant's Responses*

Judge Williams found that Defendant's answers to the government's questions were "responsive, logical, coherent and appropriate." Report and Recommendation at 5. Judge Williams relied on this observation when determining that Defendant's statements before the grand jury were voluntary under the totality of the circumstances. *Id.* at 10. Defendant argues that his answers were not responsive, logical, coherent or appropriate because they consisted primarily of one-word answers to the government's questions. *See* Brief in Support of Objections at 6-7.

After reviewing the transcript of Defendant's grand jury testimony, *see* Gov't Ex. 1 (docket no. 20), the court finds that Defendant's responses were in fact responsive, logical, coherent and appropriate. While it is true that many of Defendant's responses were simple "yes" or "no" responses to the government's questions, such observation has no bearing on whether the responses were responsive, logical, coherent or appropriate. Many of Defendant's one-word responses served to acknowledge that he understood his rights. *See* Gov't Ex. 1 at 2-4. Many others served to affirm that his marijuana use would not impact his testimony. *See id.* at 4-5. The court finds simple one-word responses to these questions to be completely appropriate. The court further observes that Defendant's lengthier responses were appropriately lucid and detailed, providing the government with responsive factual accounts of his interactions with Anthony Hall. In short, Defendant's

responses to the government's questioning were indeed responsive, logical, coherent and appropriate. *See id.* at 6-10. Accordingly, the court shall overrule Defendant's objection to Judge Williams's finding on this matter.

### B. *Government Coercion*

Judge Williams found that "the government did not engage in any coercion of any sort." Report and Recommendation at 11. Judge Williams supported his finding by observing that the government "repeatedly offered [Defendant] the opportunity to return on another day when he had not used marijuana." *Id.* Defendant argues that the government's offer to allow Defendant to return on a different day does not imply a lack of coercion because such offer was incompatible with the subpoena commanding Defendant's presence on the particular date in question. Brief in Support of Objections at 8.

The voluntariness of a defendant's statements depends on whether the statements "were the product of an overborne will." *United States v. Daniels*, 775 F.3d 1001, 1004 (8th Cir. 2014) (quoting *United States v. Havlik*, 710 F.3d 818, 822 (8th Cir. 2013)). As part of the court's consideration of voluntariness, it considers "the degree of police coercion." *Id.* (quoting *Sheets v. Butera*, 389 F.3d 772, 779 (8th Cir. 2004)); *see also Colorado v. Connelly*, 479 U.S. 157, 167 (1986) ("We hold that coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process clause of the Fourteenth Amendment.").

Here, the record is clear that the government engaged in no coercive activity capable of overbearing Defendant's will. Not only did the government offer Defendant an opportunity to postpone his grand jury testimony, but it also asked numerous questions of Defendant to secure assurances that his marijuana use would have no impact on his ability to understand the proceedings. *See* Gov't Ex. 1 at 4-5. In fact, upon learning that Defendant had consumed marijuana, the government took the following precautionary

steps: (1) before Defendant entered the grand jury room, the government informed Defendant that he could postpone his testimony, Motion Hearing Transcript at 10; (2) after Defendant was sworn in before the grand jury, the government ensured that Defendant understood his rights and obligations associated with testifying, Gov't Ex. 1 at 2-4; and (3) before proceeding to substantive questioning of Defendant, the government further ensured that Defendant's marijuana use would not impact his ability to understand or respond to its questions, Gov't Ex. 1 at 4-5. Defendant contends that he felt "tricked" into testifying because he feared he would be arrested if he acknowledged that his marijuana use affected his ability to testify. Brief in Support of Objections at 8; *see also* Motion Hearing Transcript at 6-7. However, to find that Defendant's statements were involuntary, the court must find coercive conduct on the part of the government. *See Connelly*, 479 U.S. at 167. Whatever Defendant's unstated subjective beliefs, the government's conduct was in no way coercive. Accordingly, the court shall overrule Defendant's objection to Judge Williams's finding on this matter.

### C. *Totality of the Circumstances*

Judge Williams concluded that the totality of the circumstances established that Defendant's testimony before the grand jury was voluntary. Report and Recommendation at 10. Judge Williams pointed to the appropriateness of Defendant's responses to the government's questions and the extensive efforts of the government to ensure that Defendant testified with a full understanding of the proceedings. *Id.* Defendant argues that the extent of his marijuana use rendered him beyond the "point of intoxication where [he was] not able to give a voluntary interview." Brief in Support of Objections at 8.

"A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. Boslau*, 632 F.3d 422, 428 (8th Cir. 2011) (quoting *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004)). To

determine whether a statement is voluntary, the court must assess the totality of the circumstances, including "the conduct of the officers and the characteristics of the accused." *Id.* (quoting *LeBrun*, 363 F.3d at 724). In addition to examining police coercion, as addressed above, the court considers "the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." *Daniels*, 775 F.3d at 1004-05.

Based on the totality of the circumstances, the court finds that Defendant's testimony before the grand jury was voluntary. Of the relevant circumstances, Defendant's marijuana use is the only factor that might conceivably raise the specter of involuntariness. However, the lucidity and appropriateness of Defendant's statements to the government prior to and during his grand jury testimony fatally undermine any suggestion that his marijuana use rendered his testimony involuntary. Likewise, the government engaged in no coercive behavior to take advantage of Defendant's purported intoxication in any way. Indeed, the government painstakingly ensured that Defendant's testimony was voluntary. Additionally, the duration of Defendant's testimony before the grand jury was brief and there is no indication that Defendant's maturity, education or inherent physical or mental condition would undermine his ability to testify voluntarily. In short, despite Defendant's choice to use marijuana on the morning of his grand jury testimony, the totality of the circumstances make clear that his will was not overborne. Defendant's testimony was therefore voluntary.[1] Accordingly, the court shall overrule Defendant's objection to Judge Williams's conclusion on this matter.

---

[1] As the court noted in its February 21, 2017 Order (docket no. 37), the constitutional issue of voluntariness is distinct from the evidentiary issue of relevance. *See* Feb. 21, 2017 Order at 2 n.1 (citing *Connelly*, 479 U.S. at 166-67). Therefore, the court's conclusion as to voluntariness does not purport to affect any argument by Defendant that his marijuana use is relevant to his defense at trial. As the court noted in its Order, such evidence will be deemed relevant if sufficient foundation is laid. *See id.* at 4-5.

## VI.  CONCLUSION

In light of the foregoing, the court orders as follows:

(1) Defendant's Objections (docket no. 38) are **OVERRULED**;

(2) The Report and Recommendation (docket no. 22) recommending that the court grant the Motion is **ADOPTED**;

(3) Defendant's Motion to Suppress (docket no. 15) is **DENIED**.

**IT IS SO ORDERED**.

**DATED** this 23rd day of February, 2017.

_____
LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA